UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JESUS PONCE-CARDENAS,

    Petitioner,

    v.

BRIAN ENGLISH,

    Respondent.

CAUSE NO. 3:26cv430 DRL-SJF

<u>OPINION AND ORDER</u>

Immigration detainee Jesus Ponce-Cardenas filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondent answered the petition, and Mr. Ponce-Cardenas filed a reply. The petition is ready to be decided.

Mr. Ponce-Cardenas is a Cuban citizen who entered the United States in 1980. In 1990, he was convicted of possessing a narcotic drug with intent to sell. In 1996, an immigration judge ordered him removed to Cuba, but he was released on an order of supervision in 1999. In 2012, Mr. Ponce-Cardenas was convicted in federal court of possessing cocaine with the intent to distribute it. On July 5, 2016, United States Immigration and Customs Enforcement (ICE) released him again on an order of supervision.

On June 11, 2025, Mr. Ponce-Cardenas was transferred into immigration detention following his arrest for aggravated unlicensed operation. That day, ICE notified him that his supervised release was revoked due to a change of circumstances that rendered his removal reasonably foreseeable and conducted an initial informal interview. On July 18, 2025, ICE

notified him of its intent to remove him to Mexico. According to governmental records, on August 8, 2025, ICE interviewed Mr. Ponce-Cardenas to assess whether he would be tortured or persecuted in Mexico and determined that he would not be tortured or persecuted. On September 24, 2025, ICE attempted to remove Mr. Ponce-Cardenas to Mexico, but he refused to comply with the removal. On March 26, 2026, Mr. Ponce-Cardenas refused to sign an application for travel documents for Mexico.

In his reply, Mr. Ponce-Cardenas represents that, after the Warden filed the status report on April 16, 2026, ICE asked him to sign documents relating to his removal to Mexico. He refused to sign and requested a credible fear interview because he has never been to Mexico and because he has experienced racist commentary from Hispanic people throughout his life. He represents that he is waiting for the credible interview to be conducted.

The respondent first argues that the court lacks subject matter jurisdiction over Mr. Ponce-Cardenas' habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Ponce-Cardenas ended thirty years ago. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C.

§ 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] Given his criminal convictions, Mr. Ponce-Cardenas' detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

his removal not be reasonably achievable. Indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute removal. *Id.* at 700-01. Even after, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations— are implicated and otherwise

affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 11-14 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 10-11 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Ponce-Cardenas has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the Warden identifies Mexico as the only country under consideration for removal. The government attempted to remove Mr. Ponce-Cardenas to Mexico in September 2025, but Mr. Ponce-Cardenas foiled that effort by refusing to comply with transportation orders. Further, the government continued its effort to remove him to Mexico by asking him to complete a new application for travel documents, which he has also refused to do. It thus appears that the government's efforts to remove him to Mexico would have been and will be successful but for Mr. Ponce-Cardenas' refusal to cooperate.

In response, the Warden argues that Mr. Ponce-Cardenas' refusal to cooperate with efforts to remove him should preclude any finding that his removal will not occur within the reasonably foreseeable future. The first federal appellate case to have addressed this issue appears to be *Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003). There, the immigration detainee refused to complete an application for travel documents to Poland, and Poland expressly required the information on the application to determine whether it would issue him travel documents. *Id.* at 1059. The immigration detainee further frustrated removal efforts by providing the government with conflicting information about his identity and family. *Id.* The Ninth Circuit reasoned that "the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock" and held that "an alien cannot assert a viable constitutional

6

claim when his indefinite detention is due to his failure to cooperate with the [government's] efforts to remove him." *Id.* at 1060-61.

Though neither the Supreme Court nor the Seventh Circuit appear to have addressed this precise issue in the immigration context, this seems a rather sensible rule—after all, one cannot typically create or self-inflict an alleged constitutional or other harm all one's own and then maintain standing to complain about it. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021) (injury must be fairly traceable to defendant for standing to exist). Several federal courts that have addressed this concern in immigration cases have unanimously agreed with the Ninth Circuit. *See, e.g., Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019); *Hook v. Lynch*, 639 F. Appx. 229 (5th Cir. 2016); *Kovalev v. Ashcroft*, 71 F. Appx. 919, 924 (3d Cir. 2003); *Souleymane v. Olsen*, 2026 WL 785596, 4 (S.D. Ind. Mar. 20, 2026). This rule is also consistent with 28 U.S.C. § 1231(a)(1)(C), which extends the removal period if an individual refuses to cooperate with removal efforts, and 8 C.F.R. § 241.5(a)(2), which requires such cooperation as a mandatory condition of supervised release.

Mr. Ponce-Cardenas argues that his removal to Mexico is inappropriate for two reasons. First, he argues that the government should not remove him to Mexico because it would contravene the immigration judge's order to him remove to Cuba. The applicable regulation requires the government to attempt removal to the countries designated in the order of removal, but if removal to those countries is not possible, "the order of the immigration judge does not limit the authority of the Department of Homeland Security to remove the alien to any other country as permitted by [Section 1231(b)]." 8 C.F.R.

§ 240.12(d). Mr. Ponce-Cardenas concedes that his removal to Cuba is not possible, so the immigration order does not bar the government from attempting to remove him elsewhere.

Second, Mr. Ponce-Cardenas suggests that the government has not afforded him the credible-fear interview he requested at some point after April 16, 2026. However, he does not address the Warden's representation that he received such an interview on August 5, 2025, or the documentation offered to support it [7-1]. Consequently, these arguments do not justify Mr. Ponce-Cardenas' refusal to cooperate with removal efforts to Mexico, and he cannot prevail on his claim challenging the length of his detention.

Mr. Ponce-Cardenas also argues that he is entitled to habeas relief because he did not receive advance notice of the revocation of his supervised release, which deprived him of an opportunity to respond and to seek counsel. The record reflects that Mr. Ponce-Cardenas had ample opportunity to respond to the reasons for revocation. The government notified Mr. Ponce-Cardenas of the reasons for revocation and afforded him an initial informal interview on the date he entered immigration detention, and the government also periodically reviewed the need for continued detention. Moreover, Mr. Ponce-Cardenas offers no explanation as to why he cannot seek counsel while in immigration detention. Therefore, this claim is not a basis for habeas relief. No other claims remain, so the court will deny the habeas petition.

For these reasons, the court:

(1) DENIES the petition for writ of habeas corpus [1]; and

(2) ORDERS the clerk to enter judgment and close this case.

8

SO ORDERED.

May 18, 2026                          *s/ Damon R. Leichty*
                                     Judge, United States District Court